**ROSS HUNTINGFORD,**

    Plaintiff,

v.                                                             No: 1:17-cv-1210-RB-LF

**PHARMACY CORPORATION OF AMERICA
d/b/a PHARMERICA,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 39) and Motion to Strike Plaintiff's Reply in Support of Request for Rule 56(d) Relief (Doc. 49). This case involves a contractual dispute between Plaintiff Ross Huntingford and Defendant Pharmacy Corporation of America d/b/a PharMerica (PharMerica) over whether PharMerica is required to pay Mr. Huntingford a "Deferred Payment" pursuant to the purchase agreement the parties executed when PharMerica bought Mr. Huntingford's pharmacy business. (*See* Doc. 1-1.)

What began as a seemingly straightforward motion for summary judgment has devolved into a convoluted and protracted discovery dispute in which both parties have made assertions of bad faith at every juncture. The discovery period has now closed, so much of the parties' bickering over Mr. Huntingford's Request for Rule 56(d) Relief is mercifully moot and the Court will **deny as moot** PharMerica's Motion to Strike Plaintiff's Reply (Doc. 49). However, several substantive arguments that go to the heart of the summary judgment dispute are intermingled with the briefings on Mr. Huntingford's request for Rule 56(d) relief and PharMerica's motion to strike. Thus, the Court will **grant in part** PharMerica's Motion for Summary Judgment as it relates to the quantum meruit and unjust enrichment claims, but allow Mr. Huntingford **until January 16, 2019**, to

respond more fully and clearly to the Motion for Summary Judgment on the remaining counts. PharMerica will then have 14 days from the date of that filing to file a Reply.

## I.     Background

### A. Deferred Payment Dispute

On September 30, 2013, Plaintiff Ross Huntingford and Defendant PharMerica entered into an Asset Purchase Agreement (APA) for Mr. Huntingford's pharmacy business. (Doc. 39-1 (APA) at 3.) The business provides pharmaceutical products, supplies, and consultation services to long-term care facilities in New Mexico. (*Id.*) After executing the APA, Mr. Huntingford transferred his business and various listed assets to PharMerica in exchange for a closing date payment and an inventory payment. (*See id.* at 4–5, 7.)

The APA also includes a deferred payment clause, which provides that if the Actual Gross Profit of the business meets a certain target amount at the two-year anniversary of the closing date, PharMerica must make an additional payment to Mr. Huntingford. (*Id.* at 5.) The APA defines Actual Gross Profit as the gross profit earned between the one-year and two-year anniversaries of the closing date "from each of the Qualified Customer Accounts that Buyer actively services as of the Two Year Anniversary." (*Id.* at 6.) The Actual Gross Profit calculation does *not* include any customer accounts terminated before the two-year anniversary by either PharMerica or the customer. (*Id.*)

The deferred payment is to be calculated as follows: if, at the two-year anniversary, the Actual Gross Profit is greater than or equal to $2,200,000, PharMerica must pay Mr. Huntingford $1,250,000. (*Id.* at 5.) If the Actual Gross Profit is less than $1,870,000, Mr. Huntingford will receive no deferred payment. (*Id.*) If the Actual Gross Profit at the two-year anniversary falls between $2,200,000 and $1,870,000, Mr. Huntingford will receive a lesser deferred payment

calculated using a reduction multiplier. (*Id.* at 5–6.) If PharMerica terminated an account prior to the two-year anniversary for any reason (besides being required to do so by law or because the customer account was not complying with the terms of its contract), then the minimum thresholds for the two deferred payment options ($1,870,000 and $2,200,000) would be reduced by the gross profit earned on that account prior to its termination. (*Id.* at 7.)

At the two-year anniversary of the closing date, PharMerica must "calculate the Actual Gross Profit and deliver to [Mr. Huntingford] a statement (the "Deferred Payment Statement") setting forth such calculation with reasonable supporting documentation." (*Id.* at 6.) The statement is deemed accepted unless Mr. Huntingford delivers to PharMerica a "notice specifying [his] objections to the Deferred Payment Statement in reasonable detail within twenty (20) days of its receipt . . . ." (*Id.*) In the event of a timely objection, if the parties are unable to resolve the dispute in good faith, "Buyer and Seller shall promptly engage an independent certified public accounting firm as mutually agreed by Buyer and Seller (the "Accounting Firm"), acting as an expert and not an arbiter, to resolve the items remaining in dispute (the "Disputed Items")." (*Id.*) Both parties must submit their "respective position[s] with regard to the Disputed Items" to the Accounting Firm, and the Accounting Firm must "use all reasonable efforts to resolve all the Disputed Items within twenty (20) days . . . ." (*Id.*)

On January 6, 2016, PharMerica emailed Mr. Huntingford its Deferred Payment Statement, which included an "Earn-Out Summary" aggregating the profits from the purchased accounts and stating that the accounts fell short of even the lowest target threshold required to receive a deferred payment. (Doc. 39-1 at 14, 19.) This initial Earn-Out Summary left out accounting data for various consulting and pharmaceutical services that were part of the business, and also included accounting data for rebates, which the APA expressly excluded from the calculation of the Actual Gross Profit.

3

(*Id.* at 14.) PharMerica subsequently revised the data and provided Mr. Huntingford with an updated copy of the spreadsheet, the "Earn-Out Reconciliation." (Doc. 39-1 at 14–15, 37–40.) According to the calculations in the Earn-Out Reconciliation and an affidavit by PharMerica's Senior Vice President of Corporate Development Christopher Schaefer, "Mr. Huntingford fell $648,701.00 below the Target Gross Threshold and, as such, did not qualify for the Deferred Payment." (*Id.* at 16.)

Mr. Huntingford did not trust PharMerica's data calculations, and on November 7, 2017, filed suit in the Second Judicial District Court of New Mexico, which PharMerica removed to this Court. (Doc. 1 at 1.) The Complaint alleges that the original Earn-Out Summary omitted many accounts without explanation, and that "[i]f the threshold would have been reduced by the amount of profits from the omitted accounts, or if those profits would have been included in Defendant's calculations, Mr. Huntingford would have been entitled to a deferred payment."[1] (Doc. 1-1 at 5.) The Complaint includes four counts: (1) Breach of Contract; (2) Specific Enforcement of Contract; (3) Breach of the Duty of Good Faith and Fair Dealing; and (4) Quantum Meruit and Unjust Enrichment. (*Id.* at 6–8.)

**B. Procedural Background in Federal Court**

On February 5, 2018, Judge Fashing entered a Scheduling Order that set August 3, 2018, as the termination date for discovery. (Doc. 20 at 2.) On May 7, 2018, PharMerica filed its Motion

---

[1] It appears that the parties did not follow the process laid out in the APA for challenging the deferred payment calculation. Mr. Huntingford claims he "cannot seek redress through the [APA's] independent accounting process, because Defendant failed to meet its obligation to provide Mr. Huntingford with information supporting its calculations . . . [so he] has insufficient information to formally challenge Defendant's calculations or to arrive at his own calculations." (*See* Doc. 1-1 at 5.)

However, it is not clear that Mr. Huntingford could not formally object to the calculations based on the lack of raw data and perceived calculation errors, then request that PharMerica provide the underlying invoices to the independent accountant to resolve the dispute. The Court notes its bewilderment that Mr. Huntingford did not even attempt to invoke the dispute resolution process included in the APA before seeking redress through litigation, and that PharMerica did not challenge the lawsuit on this ground.

4

for Summary Judgment. (Doc. 39.) Four days after PharMerica filed its Motion for Summary Judgment, Mr. Huntingford's counsel emailed PharMerica's counsel to request a one-week extension of the expert witness disclosure deadline, which had been set as May 18, 2018. (Doc. 44-1 at 2.) PharMerica agreed to extend the deadline to May 25, 2018. (*Id.*) Mr. Huntingford's response to the Motion for Summary Judgment was due on May 21, 2018. *See* D.N.M.LR-Civ. 7.4(a).

### C. Request for Relief Under Rule 56(d)

On May 24, 2018, Mr. Huntingford filed a belated response in the form of a Request for Relief Under Rule 56(d). (Doc. 42 at 1.) Federal Rule of Civil Procedure 56(d) allows a court to defer or deny a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Mr. Huntingford urged the Court to "deny or, at the very least, not rule on PharMerica's Motion until complete discovery with respect to the 'key determination' of Actual Gross Profit has been conducted[.]" (Doc. 42 at 3.) Mr. Huntingford's brief laid out the facts he did not yet possess but were necessary to fully respond to the summary judgment motion, and the steps he was taking to obtain the relevant evidence. (*Id.* at 5–7.)

Mr. Huntingford emphasized that PharMerica filed its motion with nearly three months of discovery remaining and even before the initial deadline for disclosure of expert witnesses. (*Id.* at 2.) Mr. Huntingford retained an expert witness, Mr. George Sandoval, to review the evidence and offer his opinion on the claims, but "[i]n reviewing the documents that have been produced to date with Mr. Sandoval, it has become apparent that PharMerica has produced insufficient documentation for Mr. Sandoval to form a complete expert opinion." (*Id.*) Noting that PharMerica had provided three different versions of the aggregate data spreadsheets and that Mr. Sandoval had

5

discovered several errors in the final version, Mr. Huntingford claimed he had good reason to question PharMerica's calculations until given an opportunity to review the underlying raw data. (*Id.* at 2–3.)

Mr. Huntingford's first production request, served on December 8, 2017, sought the production of "accounting data" relating to 53 specified accounts that PharMerica purchased from Mr. Huntingford. (*See* Docs. 44 at 6; 42-2 at 2.) In response, on February 16, 2018, PharMerica "objected to the term 'accounting data' as being vague and ambiguous" but also provided Mr. Huntingford with the final version of the Earn-Out Reconciliation spreadsheet. (Doc. 44 at 6.) More than three months later, on May 23, 2018, Mr. Huntingford's counsel sent an email to PharMerica's counsel requesting that PharMerica supplement its production with the underlying invoices used to calculate the Earn-Out Reconciliation spreadsheet by June 6, 2018, otherwise Mr. Huntingford would file a motion to compel the evidence. (Doc. 42-2 at 2–3.)

On June 6, 2018, PharMerica filed a document entitled: PharMerica's (1) Response to Plaintiff's Request for Rule 56(d) Relief and (2) Reply in Support of Motion for Summary Judgment. (Doc. 44.) In this hybrid response and reply, PharMerica urged the Court to deny Mr. Huntingford's Request for Rule 56(d) Relief because it was filed three days after the deadline for response briefs. (*Id.* at 1–2.) PharMerica also argued that Mr. Huntingford made his request to extend the deadline for expert witness disclosures in bad faith to bolster his Rule 56(d) request, alleging that he only sought the extension so that "he was in a position to file a request for additional discovery **before** disclosing a wholly inadequate expert opinion." (*Id.* at 3.) Further, Mr. Huntingford's counsel did not communicate the need for additional discovery until after the deadline to respond to PharMerica's motion for summary judgment, and only one day before filing his request for 56(d) relief. (*See id.*) Finally, PharMerica asserted that because Mr. Huntingford

6

acted in bad faith in requesting Rule 56(d) relief, PharMerica is entitled to recover attorneys' fees and costs in having to respond, pursuant to Rule 56(h). (*Id.* at 5.)

### D. Mr. Huntingford's Reply in Support of 56(d) Relief

On June 20, 2018, Mr. Huntingford filed a Reply in Support of His Request for Relief Under Rule 56(d). (Doc. 47.) The Reply reiterated that additional discovery is necessary to resolve the "key inquiry in this case"—whether PharMerica's Actual Gross Profit calculation is accurate. (*Id.* at 1.) Mr. Huntingford characterized PharMerica's decision to move for summary judgment before the completion of discovery and subsequent refusal to produce additional documents until the motion was resolved as an attempt "to grant itself a *de facto* stay of discovery in the hopes that the Court will grant its Motion." (*Id.* at 2.) To show that Mr. Huntingford had been "diligent[ly] pursu[ing] the discovery of evidence that is essential to his case[,]" the Reply also included new affidavits from two witnesses who will testify that "PharMerica's poor management of the pharmacy accounts that it purchased from Mr. Huntingford directly led to PharMerica earning lower profits from the accounts." (*Id.* at 3–4; *see also* Docs. 47-5; 47-6.)

Regarding attorneys' fees, Mr. Huntingford countered that PharMerica has not made the required showing that the Rule 56(d) request was "in bad faith or solely for delay" because "Plaintiff's counsel informed PharMerica's counsel of the Rule 56(d) request and the basis for it *before filing the request*." (Doc. 47 at 7.) He argues that, to the contrary, "Mr. Huntingford and his counsel acted in good faith and without dilatory intent, and requested relief under Rule 56(d) for the proper purpose of discovering additional, necessary evidence." (*Id.*)

### E. PharMerica's Motion to Strike the Reply

PharMerica then filed a Motion to Strike Plaintiff's Reply in Support of Request for Rule 56(d) Relief. (Doc. 49.) PharMerica argued that Mr. Huntingford's "Reply" was actually an

7

improper surreply filed without leave of Court. (*Id.* at 1–2.) The Court finds PharMerica's emphatic argument on this point perplexing, as it was *PharMerica* that first suggested the Rule 56(d) request should be treated like a separate pleading by titling its June 6 filing: "PharMerica's (1) Response to Plaintiff's Request for Rule 56(d) Relief and (2) Reply in Support of Motion for Summary Judgment." (*See* Doc. 44 at 1.) It is odd that after going out of its way to differentiate between the Motion for Summary Judgment and Request for Rule 56(d) Relief—even fashioning its filing as a "response" to the 56(d) request—that PharMerica would then file a motion to strike based in large part on the claim that Mr. Huntingford was not entitled to a reply. (*See* Doc. 49 at 1–3.) PharMerica's Motion to Strike also asserts that the witnesses Mr. Huntingford introduced in his Reply are actually untimely disclosed *expert* witnesses, so their affidavits should not be considered in ruling on summary judgment nor should they be permitted to testify.[2] (*Id.* at 4–7.)

## II. Analysis

### A. Summary Judgment on Quantum Meruit and Unjust Enrichment

Summary judgment is appropriate when the Court, viewing the record in the light most favorable to the nonmoving party, determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The moving party bears the initial responsibility of showing "an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions,

---

[2] PharMerica has moved to exclude the testimony of each of Mr. Huntingford's three proffered witnesses. (*See* Docs. 62; 63.) The Court will address PharMerica's motions to exclude in a separate opinion.

answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted).

New Mexico law recognizes that unjust enrichment and quantum meruit are claims of equity rooted in quasi-contractual obligations. *See Ontiveros Insulation Co. v. Sanchez*, 129 N.M. 200, 204 (Ct. App. 2000) ("Simply, equity does not take the place of remedies at law, it augments them; in this regard, an action in contract would be preferred to one in quasi-contract.") In line with this reasoning, the Tenth Circuit upheld a New Mexico district court's dismissal of an unjust enrichment claim due to the existence of a valid and enforceable contract:

> Consistent with the district court's interpretation of *Ontiveros* to mean that the presence of a contract bars a claim for unjust enrichment, "the hornbook rule [is] that quasi-contractual remedies . . . are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue. Courts have recognized this principle and have stated their unwillingness to resort to the doctrine of unjust enrichment to override a contractual [] provision."

*Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1117 (10th Cir. 2005) (quoting *Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co*, 130 F.3d 950, 957 (10th Cir. 1997)).

Here, PharMerica has correctly pointed out that "[t]here are no assertions by Plaintiff that the APA is not a valid agreement." (Doc. 39 at 12.) Count IV of Mr. Huntingford's Complaint—Quantum Meruit & Unjust Enrichment—does not allege that there was not a valid contract, nor do any of Mr. Huntingford's pleadings to date. (*See* Doc. 1-1 at 7.) Because there appears to be no dispute as to whether or not the APA is a valid contract, and unjust enrichment/quantum meruit claims are not permissible when contractual remedies exist, the Court will dismiss Count IV of Mr. Huntingford's Complaint as a matter of law.

### B. Summary Judgment on the Remaining Claims

PharMerica is likely correct that "evidence 'recently' collected by Plaintiff could have been obtained prior to the motion for summary judgment had Plaintiff acted diligently . . . ." (Doc. 58

at 2.) However, PharMerica filed its Motion for Summary Judgment when there were still three months remaining in the discovery period, so Mr. Huntingford should not be foreclosed from utilizing evidence properly uncovered during the remainder of the discovery period in opposing the Motion for Summary Judgement.[3]

Most of PharMerica's arguments in its Motion for Summary Judgment and its Motion to Strike rely heavily on the fact that, in several instances, Mr. Huntingford's counsel did not begin or complete discovery actions as early as PharMerica would have liked. Mr. Huntingford has indeed filed late motions, asked for last-minute extensions, and appears not to have begun the discovery process in earnest until galvanized by PharMerica filing its Motion for Summary Judgment on May 7. (*See* Doc. 44 at 5–8.) These delays, however, were still within the discovery period, and are simply not an adequate reason for the Court to grant summary judgment in favor of PharMerica on every count.

PharMerica's valid concern that the last-minute nature of Mr. Huntingford's disclosures and discovery requests would prejudice its own trial preparation would have been better assuaged through specific discovery-related motions as issues arose. For example, PharMerica argues that Mr. Huntingford's May 23 request for additional discovery was in bad faith because, even if the invoices he requested had been provided that very day, his expert would still only have had two days to review them, produce a report, and prepare to be deposed by PharMerica by the May 25 expert witness disclosure deadline. (Doc. 44 at 4.)

---

[3] The Court notes that a parallel discovery issue regarding sanctions and the insufficiency of PharMerica's proffered Rule 30(b)(6) witness is still pending before Judge Fashing. (*See* Docs. 78; 81.) While this process will continue and may involve additional depositions outside the original discovery period, the Court will not consider any requests to further delay ruling on PharMerica's Motion for Summary Judgment, regardless of the date set for any additional depositions.

However, the possibility of this tight time frame alone does not prove that Mr. Huntingford acted in bad faith. If this hypothetical situation *had* arisen, PharMerica could have moved to strike the expert report (as it suggests it would have). (*See id.* at 3.) Or, if Mr. Sandoval was not prepared to be deposed by the deadline and needed more time to review the invoices, Mr. Huntingford could have sought another extension and the Court would have then been in the proper position to analyze the adequacy and diligence, or lack thereof, of his discovery efforts. (*See id.* at 3–4.) Regardless, the discovery period has now ended, and notwithstanding his counsel's various delays throughout the process, Mr. Huntingford is entitled to use facts and evidence obtained during the discovery period to fully respond to PharMerica's Motion for Summary Judgment on the remaining claims. He may do so in a supplemental response on or before December 27, 2018.

The Court cautions, however, that it will not look kindly on requests by Mr. Huntingford to conduct further discovery now that the discovery period has closed. As Mr. Huntingford urged, the Court waited until after the close of discovery to rule on PharMerica's Motion for Summary Judgment. Mr. Huntingford has had ample opportunity to request, review, and compel any additional evidence he believes is necessary to fully respond to the Motion. As such, the Court is baffled that, during the three months of remaining discovery time following PharMerica's Motion, Mr. Huntingford did not to move to compel the evidence he repeatedly called "key" and "critical." (*See, e.g.*, Doc. 47 at 1.) A central prong of Mr. Huntingford's argument in favor of Rule 56(d) relief was that he "diligently pursued the discovery of evidence that is essential to his case." (*Id.* at 3.) Yet despite warning PharMerica that he would move to compel the evidence if it did not produce the invoices by June 6, 2018 (*see* Doc. 42-2 at 3), Mr. Huntingford failed to do so. The Court agrees that the underlying invoices and other raw data used to create the Earn-Out Reconciliation appear to be critical to Mr. Huntingford's breach of contract claim, but the Court

11

will not be sympathetic to any further arguments about PharMerica's failure to produce this data since Mr. Huntingford did not take additional steps to compel the evidence. The Court will not sua sponte order the production of additional evidence without a formal motion to compel.

### C. Attorneys' Fees

Under Rule 56(h), "[i]f satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result." Fed. R. Civ. P. 56(h). As discussed above, the Court finds that Mr. Huntingford's counsel has repeatedly waited until the last minute (and sometimes past the last minute) to file briefings and make discovery requests, but PharMerica has not convinced the Court that these actions were undertaken "in bad faith or solely for delay." *See id.*

For example, the Court will not indulge PharMerica's belabored argument that Mr. Huntingford "misleads the Court by stating that the one-week extension on expert disclosures was due to newly disclosed documents." (Doc. 49 at 8.) In fact, as even PharMerica acknowledges, Mr. Huntingford simply described the extension request as necessary "to give Mr. Sandoval additional time to review the documents produced by PharMerica and prepare his expert report." (Doc. 47 at 5; *see also* Doc. 49 at 8 (quoting same).) Though Mr. Huntingford indeed could have retained his expert witness and begun his review of the evidence more promptly, PharMerica has not convinced the Court that this last-minute request amounts to "obvious ill-intent." (*See* Doc. 49 at 8.) Further, the record simply does not show that Mr. Huntingford claimed the extension was necessary to review new documents. (*See* Doc. 47 at 5.) Defense counsel appear so determined to show bad faith that they have either misread or misinterpreted the pleadings. The Court will deny

PharMerica's request for attorneys' fees in relation to Mr. Huntingford's request for relief under Rule 56(d).

**THEREFORE**,

**IT IS ORDERED** that Defendant's Motion to Strike Plaintiff's Reply in Support of Request for Rule 56(d) Relief (Doc. 49) is **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 39) is **GRANTED in part** as to Plaintiff's claims of unjust enrichment and quantum meruit, and the Court will reserve judgment on the remainder of the Motion until the parties have filed the supplemental briefing described herein;

**IT IS FURTHER ORDERED** that Plaintiff may file a Response to the Motion for Summary Judgment as to the remaining counts on or before **January 16, 2019**, and PharMerica will then have 14 days from the date of that filing to file a Reply.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE